DONALD W. SEARLES (Cal. Bar No. 135705)
Email: searlesd@sec.gov
KELLY C. BOWERS (Cal. Bar No. 164007)
Email: bowersk@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Katharine E. Zoladz, Co-Acting Regional Director
Gary Y. Leung, Associate Regional Director
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ESOS RINGS, INC.; and MICHELLE SILVERSTEIN aka MICHELLE SILVERSTEIN BISNOFF,<br><br>　　　　Defendants, | Case No. 2:23-cv-7553<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a).

2. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because Defendant Esos Rings, Inc. ("Esos") has its principal place of business in this district and Defendant Michelle Silverstein aka Michelle Silverstein Bisnoff ("Bisnoff") resides in this district.

## SUMMARY

4. This civil enforcement action concerns a fraudulent securities offering by Esos and Bisnoff. From February 2017 to June 2022, Esos was purportedly in the business of manufacturing and selling smart rings, which function as a debit card embedded in a wearable ring form. During that same period, Esos and Bisnoff, Esos's CEO and sole control person, raised $1.95 million from 16 Investors (the "Investors") through the following materially false and misleading statements:

(a) Esos's ownership of patents for the smart rings – in fact, Esos never owned the smart ring patents;

(b) Esos was raising money from Investors to increase Esos's

1

manufacturing capabilities and inventory – in fact, Bisnoff used Investor money to make Ponzi-like payments to prior Investors, and to benefit herself, including to pay rent for the luxury home in which she and her family lived;

   (c) Esos was imminently going to be sold, or receive a large investment, that would result in the quick repurchase of the Investors' stock at a profit – in fact, none of the purported imminent sales of, or large investments in, Esos ever existed; and

   (d) Esos was a profitable business that had entered into significant business deals for the sale of its smart rings – in fact, Esos was not profitable, and the purported business deals either never existed or were temporary test arrangements that never resulted in the sale of any Esos rings.

  5. Through their conduct, and as further detailed below, Defendants violated the antifraud provisions of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

  6. With this complaint, the SEC seeks: (i) findings that Defendants committed these violations; (ii) permanent injunctions prohibiting each Defendant from future violations of the securities laws; (iii) a permanent injunction precluding Bisnoff from directly or indirectly, including, but not limited to, through any entity owned or controlled by her, participating in the issuance, purchase, offer, or sale of any security in an unregistered offering, provided, however, that such injunction shall not prevent her from purchasing or selling securities listed on a national securities exchange for her own personal account; (iv) an officer and director bar against Bisnoff; (v) disgorgement with prejudgment interest from each Defendant; and (vi) civil monetary penalties against each Defendant.

## DEFENDANTS

  7. **Esos** is a Delaware corporation formed by Bisnoff in February 2017, has had its principal place of business in Los Angeles and Santa Barbara, California, and is controlled by Bisnoff. Neither Esos nor its securities are registered with the SEC.

8. **Bisnoff**, age 56, has been a resident of Los Angeles, and Santa Barbara, California. Bisnoff formed Esos and is Esos's CEO and only control person. Bisnoff is not registered with the SEC.

## THE ALLEGATIONS

### C. Esos's Represented Business

9. In February 2017, Bisnoff formed Esos to manufacture and sell smart rings based on patents purportedly owned by Esos. Esos claimed it could make money by selling the rings to users and by collecting "interchange fees" from the users' payment transactions.

10. Esos's CEO, Bisnoff controlled Esos.

11. From February 2017 to June 2022, Esos manufactured and sold a limited number of smart rings. However, only 63 Esos smart rings were ever activated, and those rings were loaded with a total of only $12,035 to make purchases. Because there were so few Esos smart rings being used, Esos did not receive any interchange fees. Moreover, Esos never owned the patents for the smart rings.

### D. Defendants' Offer and Sale of Esos Stock

12. February 2017 to June 2022, Esos and Bisnoff raised at least $1.95 million by selling Esos stock to 16 investors (collectively, "Investors").

13. Esos and Bisnoff did not provide the Investors with standardized offering disclosure documents other than a "Restricted Stock Agreement." The Restricted Stock Agreement stated the number and price of stock shares being sold, and granted Esos the right of first refusal to repurchase the stock.

14. Instead of standard offering disclosure documents, Esos and Bisnoff solicited the Investors through emails sent to one or more Investors. Bisnoff's email sales pitches represented that: (1) Esos owned the smart ring patents; (2) Esos was seeking money to increase its manufacturing capabilities and inventory; (3) Esos was imminently going to be sold or receive a large investment that would result in the quick repurchase of the Investors' shares at a profit; and/or (4) Esos was profitable

and had entered into significant business deals.

15. As further alleged below, Esos and Bisnoff's representations to Investors were materially false and misleading, and Bisnoff used Investor money to make Ponzi-like payments to earlier Investors and to benefit herself.

### E. Esos and Bisnoff's False Statements

#### 1. False Statements Regarding Esos's Ownership of Smart Ring Patents

16. Esos and Bisnoff misrepresented to Investors that Esos owned the smart rings patents. In fact, Esos never owned the patents for the smart rings.

#### 2. False Statements Regarding Esos's Need for Investor Money

17. Bisnoff misrepresented to Investors A, D, and F the reason for why Esos was seeking investment from outside investors. Bisnoff told Investors A and D that Esos needed money to pay for increasing its manufacturing capabilities, and she told Investor F that she was raising money to increase Esos's inventory.

18. Bisnoff, however, did not use substantial amounts of the Investors' money as represented. She used more than half of Investor A's $150,000 investment for purposes other than increasing its manufacturing capabilities, including transferring $39,784 to her personal bank account, paying Esos's lawyers $16,686.50, and paying $42,500 on a debt she incurred on behalf of her former employer. Similarly, Bisnoff used Investor D's $205,000 investment to repurchase another Investor's shares for $15,000 (which resulted in a $4,500 profit to the prior Investor) and to make a $10,000 payment for Esos on a high interest loan. Finally, Bisnoff used over half of Investor F's $30,000 investment to pay $15,628 in rent for her personal residence. **False Statements Regarding Esos's Imminent Acquisition and Incoming Investments**

19. Esos and Bisnoff misrepresented to Investors B through H that Esos was about to be acquired or receive a large investment that would result in the quick repurchase of the Investors' stock at a profit.

4

20. For example:

(a) On December 5, 2017, Bisnoff emailed Investor B that Virgin Mobile/Sprint was investing $3.5 million in Esos at $10 a share in a deal set to close on December 15, 2017. She also told Investor B that she had 5,000 Esos shares she could sell to Investor B at $7 a share and that Investor B could sell the shares back after the Virgin Mobile/Sprint deal closed on December 15, 2017.

(b) December 28, 2017, Bisnoff emailed Investor D that two named venture capital firms were investing $3.85 million in Esos at $11 per share. She also told Investor D that she had 15,000 shares she could sell to Investor D at $10 a share and the shares would be repurchased at $11 a share on January 22, 2018.

(c) On May 21, 2018, Bisnoff emailed Investor B that Esos was being sold to Roc Nation on June 8, 2018, at $13 a share. Bisnoff also told Investor B that she had 5,000 shares she could sell to Investor B at $10 a share.

(d) On July 19, 2018, Bisnoff emailed Investor E that Esos's board had agreed to sell Esos to Apple at $15 a share in a deal set to close on August 15, 2018. Bisnoff added that she could sell to Investor E a minimum of 4,000 shares from a pool of shares designated for employees at $10 a share.

(e) On November 12, 2019, Bisnoff emailed Investor B that Esos had a confirmed offer from a named female entrepreneur to acquire a 34% ownership percentage of Esos for $31.50 a share. She also told Investor B that she had 5,000 Esos shares she could sell Investor B at $22.50 per share and that, for tax reasons, Esos would not repurchase the shares until January 2020.

(f) On February 2, 2021, Bisnoff emailed Investor G that Esos was transferring ownership of the company to Investors A and D for $31 a share in a deal that was set to close on March 1, 2021. She also told Investor G that she could sell Investor G 25,000 unassigned shares at $10 a share and explained that if the shares were not assigned to an Investor by March 1, the shares would go to the new buyer at $10 a share.

(g) On December 1, 2021, Bisnoff told Investor H that Investor H could invest in Esos stock at $10 a share before Esos was going to be acquired by a named Brazil-based electronic payment company for not less than $24.12 a share. Bisnoff also told Investor H that the investment would be a short-term investment with a quick exit, because the acquisition of Esos would occur in early 2022.

21. All of these representations were false. In each instance, the purported new owner or large investor either did not know Esos or Bisnoff, had no documents concerning them, or had had minimal contact with them. None of the purportedly impending deals ever happened.

### 4. False Statements Regarding Esos's Profitability

22. Esos and Bisnoff misrepresented to Investors F and H that Esos was earning substantial profits.

23. On October 5, 2020, Bisnoff emailed to Investors F and H that Esos was a profitable business with a return on assets of $0.92 on the dollar. The next day, Bisnoff provided Investors F and H with Esos's purported financial statements from 2017 through August 2020 and its 2019 tax return. The financial statements had a cover page indicating that they had been prepared by a local CPA firm, and the last page stated that they had been reviewed by a CPA and were signed by the CPA. The financial statements showed Esos's net income after taxes was $45,600 in 2017, $580,592 in 2018, $921,094 in 2019, and $171,178 in the first eight months of 2020. The tax return stated that it was prepared by the same CPA at the same CPA firm and reported taxable income of $526,012.

24. The information Bisnoff provided to Investors F and H on Esos's financial results was false. Esos was not profitable.

25. Through September 2020, excluding money from and to Investors, Esos's bank withdrawals exceeded deposits by over $800,000. Similarly, Esos did not have the profits reported in the financial statements and tax returns. For example, in 2019, Esos had total bank deposits (excluding Investor deposits) of only

$164,634.17, an amount inconsistent with the $921,094 net income reported by Esos's putative financial statements and the $526,012 in taxable income reflected in Esos's purported tax return.

26. The CPA and CPA firm referenced in Esos's financial statement and tax return did not prepare those documents. The CPA never signed the financial statements, and his signature had been forged on them.

27. Esos and Bisnoff also misrepresented to Investors B and C that Esos had entered into business relationships with other companies that would increase the company's revenues.

28. On April 4, 2018, Bisnoff emailed Investor C that Esos had "completed a mass retail branding agreement" with a named silicone ring company that sold 4.4 million rings a year and that they expected the "new impressive silicone smart rings to increase sales substantially." Bisnoff's email also included a purported press release announcing the agreement, which Bisnoff represented would be released the next week.

29. Bisnoff's representation was false. On May 20, 2018, Esos and the silicone ring company entered into a six-month pilot agreement under which Esos granted the silicone ring company a royalty-free license to use Esos's ring technology. The pilot agreement expired in November 2018. Esos never received any payments from the silicone ring company.

30. On March 4, 2019, Bisnoff emailed Investor B on that, as of April 20, 2019, Esos would be licensing its technology in the US exclusively through Synchrony Bank.

31. Bisnoff's representation was false. Synchrony Bank's only interaction with Bisnoff and Esos was that they failed to deliver on their promise to supply smart rings for an event co-sponsored by Synchrony Bank at the April 2019 Women in the World Conference.

### F. Defendants' Ponzi-Like Payments and Transfers for Bisnoff's Benefit

32. As alleged above, Esos and Bisnoff sold Esos stock through false and misleading statements about imminent investments or buyouts that would result in the repurchase of Investor's Esos shares at a profit. When the investments or buyouts did not happen, Esos and Bisnoff on nine occasions used new Investor money to make $646,000 in Ponzi payments to prior Investors.

33. As one example, on January 7, 2019, Esos had $1,236 in its bank accounts. Between January 7 and 9, 2019, the only deposits into Esos bank accounts were from three Investors who wired a total of $70,000 to Esos. On January 9 and 10, 2019, Bisnoff wired $51,000 to another Investor repurchase the Investor's stock at a $12,000 profit for the Investor. Apart from $1,236, the only source of the $51,000 that Bisnoff wired to the prior Investor was the new investments from the three Investors between January 7 and 9, 2019.

34. In another example, on February 4, 2021, Investor G wired $250,000 to Esos in order to purchase 2,500 shares at $10 a share. Before that wire, Esos had $5,934 in its bank accounts. That same day, Bisnoff wired $247,250 to three Investors who had previously purchased $100,000 in Esos stock. The only source of the $247,250 wired to the three prior Investors was Investor G's money, except for the $5,934 that was previously in Esos's bank accounts.

35. During the period that Bisnoff was selling Esos stock to Investors, she used $566,483 to benefit herself, including $226,402 net transferred to her personal account and $340,081 to pay rent on her personal residence.

### G. Defendants Acted With Scienter and Their Conduct Was Negligent

36. As Esos's chief executive officer and only control person, Bisnoff controlled the Esos financial accounts that received and spent investor funds, and had knowledge of the company's intellectual property rights, Esos's decision not to use investor capital to expand its manufacturing capabilities and inventory, whether a sale

to or substantial investment from third-parties was imminent, and the company's profitability and operational revenues.

37. Accordingly, Bisnoff knew or was reckless in not knowing that the representations to investors alleged by this complaint were false and misleading, and Bisnoff knew or was reckless in not knowing that investor funds were being used to make Ponzi-like payments and being transferred for Bisnoff's personal benefit.

38. Bisnoff's conduct in connection with Defendants' false and misleading statements to investors and misuse of their funds was unreasonable, and by engaging in that conduct, Bisnoff acted negligently.

39. Because Bisnoff is Esos's chief executive officer and only control person, her scienter and negligence are imputed to Esos.

## FIRST CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a) of the Securities Act

**(Against All Defendants)**

40. The SEC realleges and incorporates by reference paragraphs 1 through XX above.

41. In the offer or sale of securities, Defendants made false and misleading statements regarding Esos's ownership of the smart ring patents; Esos's failure to use investor funds to expand its manufacturing capabilities and inventory; imminent sale of, or large investment in, Esos; and Esos's profitability and significant business deals.

42. In addition, Defendants engaged in a scheme to defraud by making and/or disseminating false and misleading statements and misusing Investor money through Ponzi-payments and payments benefitting Bisnoff.

43. By engaging in the conduct described above, Defendants, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails (a)

1. employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

44. Defendants, with scienter, employed devices, schemes, or artifices to defraud; and Defendants, with scienter or negligence, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and Defendants, with scienter or negligence, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

45. Esos acted entirely through Bisnoff and her knowledge, recklessness and/or negligence, which may be imputed to Esos.

46. By reason of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Sections 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

**(Against All Defendants)**

47. The SEC realleges and incorporates by reference paragraphs 1 through XX above.

48. In connection with the purchase or sale of securities, Defendants made false and misleading statements regarding Esos's ownership of the smart ring patents; Esos's failure to use investor funds to expand its manufacturing capabilities and inventory; imminent sale of, or large investment in, Esos; and Esos's profitability and

10

significant business deals.

49. In addition, Defendants engaged in a scheme to defraud by making and/or disseminating false and misleading statements and misusing Investor money through Ponzi-payments and payments benefitting Bisnoff.

50. Because Bisnoff was the CEO of Esos and the sender of the false and misleading statement to Investor, Bisnoff, directly and indirectly controlled Esos entity and exercised day-to-day control over it, Bisnoff and Esos are each of the maker of the false and misleading statements to Investors.

51. By engaging in the conduct described above, Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, employed devices, schemes, or artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

52. Defendants, with scienter, employed devices, schemes, or artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities by the conduct described in detail above.

53. Esos acted entirely through Bisnoff, and her knowledge and/or recklessness may be imputed to Esos.

54. By reason of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that the Court:

**I.**

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

**II.**

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendants, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and Section 17(a) of the Securities Act [15 U.S.C. § 77q(a).]

**III.**

Issue a judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure and pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2) and/or Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], permanently enjoining Bisnoff from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

**IV.**

Issue an order, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], permanently enjoining Bisnoff from directly or indirectly, including, but not limited to, through any entity owned or controlled by her, participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer; provided, however, that such injunction shall not prevent Bisnoff from purchasing or selling securities listed on a national securities exchange for her own

personal account.

## V.

Order Defendants to disgorge all funds received from their illegal conduct, jointly and severally, together with prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)].

## VI.

Order Defendant Bisnoff to pay civil penalties under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

## VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VIII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: September 12, 2023

/s/ Donald W. Searles
Donald W. Searles
Kelly C. Bowers
Attorneys for Plaintiff
Securities and Exchange Commission